Frank R. Fageol v. Commissioner.
Fageol v. Commissioner
Docket No. 25884.
United States Tax Court
1951 Tax Ct. Memo LEXIS 248; 10 T.C.M. (CCH) 377; T.C.M. (RIA) 51112; April 30, 1951
*248 Petitioner, a corporation executive, bought a farm in 1937 and operated it through a farm manager until 1944, sustaining a loss in each year. He leased the farm for a term of five years ending in 1949. In the taxable years 1945, 1946, and 1947, his farm expenses exceeded his income from the farm. Held, petitioner was not operating the farm for recreation or as a hobby but for the purpose of producing income and is entitled to deduct from other income the farm losses incurred. N. Barr Miller, Esq., for the petitioner. Thomas V. Lefevre, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax for the calendar years 1945, 1946, and 1947, in the amounts of $23,079.97, $4,122.22, and $3,988.76, *249 respectively. A stipulation of facts was filed. The issue is narrowed by stipulation to the single question whether petitioner, who owned certain farm property, is entitled to deduct in each year the excess of his farm expenses and depreciation over his receipts from such property. The amounts of the receipts, expenses, and depreciation are stipulated. Petitioner filed income tax returns for the taxable years with the collector of internal revenue at Cleveland, Ohio. Findings of Fact The stipulated facts are so found. Petitioner is an individual who resided at Cottage Hill Farm, near Ravenna, Ohio, in the taxable years 1945, 1946, and 1947. For such years his books of account were kept and his tax returns filed on the cash receipts and disbursements basis. Petitioner is a corporation executive. He is chairman of the board of directors of Twin Coach Company, Kent, Ohio, a corporation manufacturing transit vehicles. He has interests in other manufacturing corporations. He devotes long hours to his duties in these companies. He has investments in lands in Texas and in other business enterprises. In 1937 he owned a residence in California and another at Stow, Ohio. On March 3, 1937, he *250 purchased the property herein referred to as Cottage Hill Farm, comprising some 725 acres of land in Portage County, Ohio, for $100,000. Petitioner had entertained the opinion that farming could be profitable if carried on in a sound business manner. He had several motives in buying Cottage Hill Farm. He intended to make it a profitable farming venture; the farm was located only some six miles from his office; the residence he considered more suitable to his desires and more convenient than the one at Stow; and he thought the property was a good investment at the price for which it was offered. He considered the possibilities of profit from crops and livestock, from timder, from maple sirup, and from mineral rights in the land. The Cottage Hill Farm property included about 325 acres of tillable land, about 200 acres of timber, and some swampy land. There was a main residence built of stone, containing about 30 rooms, nine other dwelling houses, and farm buildings such as stables, barns, silos, and granaries. The residence had been vacant and the farm unused for several years. Some of the dwelling houses were rented to tenants for approximately $10 per month each, but the rents *251 were often unpaid. The buildings and fences were in a run-down condition. Following the purchase of Cottage Hill Farm, petitioner spent about $55,000 in rehabilitating buildings, repairing fences, and putting the farm in operating condition. The dwelling houses were repaired, repainted, and reroofed where necessary, and were then rented to a better class of tenants at higher rentals. From this source petitioner realized $3,200 in 1942 as compared with $150 in 1939. Petitioner engaged a farm manager to run the farm and sought expert advice as to the best methods of operating it. He bought some 50 to 70 head of feeder cattle in 1938, as they would be a source of income and would not require much care while the farm was being rehabilitated. Following advice he bought hogs and raised pork for market, having at one time some 2,200 hogs on the farm. The price of pork fell and the anticipated profit was not realized. He raised corn, wheat, oats, and barley, rotating crops in accordance with advice received from agricultural agents, and in some years raised soy beans to plow under, also alfalfa. He raised poultry. He engaged an experienced man to handle his hog program and other employees *252 to have charge of other phases of the farm operations. He issued instructions to his employees and informed them that their continued employment would depend upon the efficient and profitable operation of the divisions of the farm under their charge. He asked his farm manager to give him written advice and constructive suggestions toward profitable operation of the farm. In 1938 petitioner engaged the services of an accountant to set up a system of books covering the farm operation to show him whether he was making or losing money and to show whether certain items were paying or losing. A system of accounts was established on a cash basis and was maintained through and following the taxable years. The expenses of the residence were segregated from those of the remainder of the farm. The expenses for which deductions are here claimed do not include expenses of the residence. The accounts showed at the end of 1939 total farm assets of more than $170,000 of which about $70,000 represented investment in the 30-acre tract embracing the residence and nearby buildings, and over $100,000 was allocated to the farm apart from the residence. During the years 1937 to 1943, inclusive, and *253 until about March 1, 1944, Cottage Hill Farm was operated under the direction and control of petitioner through his farm manager. The farm was operated at a loss during such years. Petitioner claimed deductions on his income tax returns for such years for the amounts by which the expenses and depreciation of the farm exceeded his farm income. A sale was made in 1941 to a railroad of a tract to be used as a right-of-way. In 1942 petitioner sold three of the dwelling houses each with two or three acres of land. Profits on these sales were reported on petitioner's income tax returns. In 1944 petitioner entered into a lease with Cecil A. Cooper for the rental of the farm. The 30-acre tract which included the residence and certain buildings near it was reserved, as were also four of the dwelling houses. The lessee was to have the use of two dwelling houses and certain specified farm buildings. The lessee agreed to pay as rent certain stated quantities of farm produce, such as hogs, chickens, eggs, milk, corn, hay, and straw. He agreed among other things to farm the land in a constructive and modern manner and pay all costs thereof, to keep the buildings and grounds in a clean and orderly *254 manner, to keep the roadways mowed in summer and snow plowed in winter, and to maintain insurance on the property. Petitioner, as lessor, reserved the right to sell any part of the property which would not materially affect the use of the farmlands. By subsequent agreement the lessee undertook to operate a maple sugar camp which was built on the farm at petitioner's expense and to deliver 25 per cent of the sirup or other products to petitioner. Petitioner also reserved the right to lease oil and gas rights in the property. The lease was for a term of five years from March 1, 1944. One of the reasons for leasing the farm was the shortage of farm labor resulting from the war. Cooper had a large family which could help with the farm work. Petitioner and Cooper agreed as to the values to be placed on the produce delivered to petitioner as rent, and accounted for it on the books as amounting to $1,740 per year. In 1946 petitioner bought a sawmill and engaged an operator and crew to cut lumber from trees on the land. Some trees had fallen and others were afflicted with rot. These and some others were cut. Some of the lumber was used for fencing on the farm and some was sold to Twin Coach *255 Company, the proceeds being accounted for as farm income to petitioner. Petitioner sustained net operating losses in connection with the farm. As shown by the books, the decifits for the years 1939 to 1943, and for the taxable years were as follows: 1939
$22,287.30
1940
28,479.50
1941
11,033.34
1942
11,669.31
1943
10,618.22
1945
15,893.31
1946
5,365.74
1947
6,532.62
In 1945 petitioner had most of the buildings repainted. Painting had not been possible during the war years and the buildings were in need of repainting. In 1948 petitioner's loss from the farm, as shown by the books, was $2,909.47. In 1949 the lease expired. Petitioner had a firm of engineers make a survey of the farm. The firm advised petitioner to engage in diversified farming. Petitioner did not renew the lease, but operated the farm at a small profit for the year 1949. Since the labor supply was short, petitioner hired neighboring farmers to do the farm work on a piecework basis. Petitioner and his wife did not use the farm primarily for social purposes. Petitioner kept riding horses in a stable on the residence property and rode with his guests on the various roads in and around *256 the farm. Petitioner during the taxable years held Cottage Hill Farm for the production of income and not primarily for recreation or as a hobby. The excess of the farm expenses and depreciation over his income from the farm in such years is deductible on his income tax returns. Opinion The question here is whether petitioner operated the farm as a trade or business or for profit on the one hand, or for recreational purposes or as a hobby on the other. [1]
Petitioner is a corporation executive who has investments in several business *257 enterprises and in land. He purchased Cottage Hill Farm with a view to making a profit from raising crops or livestock, from the sale of timber or mineral rights, or from sale of the land at a price in excess of its cost. While other motives were present such as the desire for a large house located conveniently to his place of business, we think his principal purpose with regard to the property with which we are primarily concerned, was to produce profit by operating the farm in a business-like manner under competent management. He took steps to increase the rental income from the dwelling houses and embarked on programs for raising hogs, cattle, poultry, and various crops. He departmentalized the farm operations, placed an employee in charge of each phase of the work and instructed each employee that continued employment depended upon the profitable operation of his phase of the farming. He sought by several means to reduce the losses and make the farm profitable. The fact that losses resulted is not controlling if the evidence shows an intention eventually to make a profit. Norton L. Smith, 9 T.C. 1150. Respondent contends, however, that after leasing the farm to *258 Cooper in 1944 for a term of five years, petitioner in the taxable years was not in the business of farming, for Cooper, not petitioner, was the farmer, and that petitioner had ceased farming for profit. Petitioner was led to lease the property principally by the war created shortage of farm labor. He circularized agents in the neighborhood and through them met Cooper who could solve the labor shortage because he had a large family able to help with the work. Petitioner testified he made as good a bargain as he could in leasing the property and an amount of farm produce was stipulated as rental which was satisfactory to both parties. Cooper paid no cash rent, as such, and where the agreed items could not be delivered, others were substituted by mutual consent. In this leasing of the farm we fail to find a change of intention on petitioner's part or a departure from the profit motive with which the farm was operated. We see no hint that he thereafter treated the farm as a hobby or recreation. On the contrary, the various steps taken were still directed toward increasing the income from the property or minimizing the net loss. The deficit was less in these years than it had been in *259 those preceding. He continued to receive the rentals of four dwelling houses as well as the produce paid as rental for the farm. He arranged for a sawmill to cut lumber that would otherwise be wasted and sold some of this to Twin Coach Company. He agreed with Cooper to process sap from the maple trees and realized some rental income from that source. The losses continued and that which occurred in 1945 was increased by the expense of painting the buildings, a maintenance operation which had been delayed for several years by the war, but which was necessary to preserve the value of his considerable investment. The lease was a temporary expedient. At the end of the term he could, as he did, resume active direction of the farm and hope to make it profitable. Meanwhile he made the best possible bargain to keep the property in operation and producing income. Petitioner made little social or recreational use of the farm. He was accustomed to working long hours at his office, and enjoyed riding horses over the farm roads, alone, or with week-end guests, but his social life does not appear to have been a principal factor in his selection and purchase of the farm in the first place. Under *260 respondent's Regulations 111, section 29.23(a)-15(2), expenses incurred in conserving or maintaining property held for investment may be deductible even though the property is not currently productive. The expenses here involved, if not expenses of operating the farm as a business, were related to the conservation of petitioner's investment in the farm. We find the issue in favor of the petitioner. Since there are uncontested adjustments, Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Code. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management. conservation, or maintenance of property held for the production of income.↩